## Newton v. Newton.

### December 16, 1949.

Ben B. Morris for appellant.

M. C. Anderson for appellee.

JUDGE HELM—Reversing.

Appellant, Mae Ethel Newton, pleads that appellee, Jake G. Newton, wilfully deserted and abandoned her November 20, 1945, and has since failed and refused to contribute to her support; that at that time she was suffering from a severe physical ailment; that he has

property of the value of approximately $10,000, and is capable of earning $150 per month. She asked for a divorce from bed and board, and alimony in the amount of $5,000.

Appellee filed answer, counterclaim and cross-petition denying the allegations of her petition, and pleading that he and appellant sold a farm for $2,150; that they put the money in a joint account; that appellant withdrew $1,075 of this amount; that since November, 1945, he has permitted appellant to collect the rents of a house and lot located in Wickliffe, which property has the reasonable rental value of $20 per month. He says that appellant should restore to him the sum of $1,075 which appellant withdrew from the bank, and $520 representing the rental value of the house and lot.

She denies the allegations of his counterclaim; denies that she has the sum of $1,075; pleads that she withdrew this amount to pay her accumulated doctor's and medical bills, she being an invalid at the time and the defendant failing and refusing to pay these bills for her; that Walter Newton, their son, was compelled to mortgage his property in order to obtain funds to assist her in procuring medical treatment; that she has received only $12.50 per month in rentals; that this amount is insufficient to maintain her and to pay her doctor's and medical bills.

Summarizing the testimony, appellant, Mae Ethel Newton, 55, married appellee in 1908 when she "was 15 years old." They have one child, Walter Newton, 39, single. She has been living with her son since October, 1936. Appellee left her November 20, 1945. At that time she was "in a terrible shape," suffering from arthritis which she has had since 1941. At the time Jake left, she couldn't get out of the bed without help. Appellee would not furnish her medical care, cursed and abused her because she could not do her work, told her that he hated her and wished she would die. When appellee would abuse her, their son would object and protect her.

After their marriage they lived on a farm. She worked in the field, plowed, disked, harrowed, set, suckered, and cut tobacco, mowed hay, gathered corn, "did as much work in the field as any man did," and cooked

the meals and kept house. They separated in 1936, got back together in the spring of 1937, lived at the "Bunker Hill" home of their son until 1945. They had sold a farm for $2,150, putting the money in the bank in a joint account. She withdrew $1,075, which she used for living expenses and to pay large drug and medical bills which she had incurred in an effort to secure relief from arthritis. Some two years after he left her, and after he had insisted that she file a suit for divorce, this action was begun. At that time he had property—the Boyd place, worth $1,500; the Pollock place, worth $3,000; $2,500 in the bank, a total of $7,000, property accumulated by their joint efforts.

The testimony for appellee, Jake G. Newton, is that he was born in 1884, is a common laborer, earning when he works 75c an hour, eight hours a day; he has property in Wickliffe; the Boyd place worth $1,500, and the Pollock place $2,000. He has around $1,500 in the bank. They divided their furniture at the time of their first separation. Appellee denies cursing or abusing his wife, or telling her he wished she would die. He says that the "biggest trouble" was between him and Walter; that the condition of his wife's health at the time of their separation in 1945 "was very bad;" her "trouble was rheumatism or arthritis." She was not confined to her bed altogether; at times she could not get about without the use of a chair or crutch. He did not contribute anything to her after 1945 except the rent of the Boyd house. He does not know whether at that time she had any part of the $1,075 joint account money which she had withdrawn. After she was stricken with arthritis, his wife made a desperate effort to secure relief. He feels that this money was largely wasted. He did not pay any part of her medical or drug bills. Asked, "You want a divorce?" he replied, "Sure, I do." Asked, "You want a property settlement?" he replied, "That is right." In rebuttal, Mrs. Newton says of her husband, "He didn't get me a doctor. He said my disease was incurable, that he wasn't paying out his hard earned money for a doctor."

In a memorandum opinion, the chancellor felt that there was no hope for a reconciliation between the parties; that "equity, as well as public welfare, demands that the bonds of matrimony be dissolved and defend-

ant granted a divorce and that the plaintiff be entitled to recover $1,500 from the defendant unless he desires to convey to plaintiff the Boyd house and lot, which is of the value of $1,500." It was the judgment of the court that plaintiff's petition, so far as it sought a judgment from bed and board, be dismissed; that "the defendant and counter-claimant, * * * be granted an absolute divorce from the plaintiff." It was further said that "an equitable settlement of the property rights between the parties * * * would be to require the defendant to pay to the plaintiff the sum of $1,500."

It was adjudged that he pay the plaintiff $1,500, or execute and deliver to her a deed for the Boyd property, free from all liens. Appellant was also adjudged her costs, including $175 for her attorney.

Appellant appeals from so much of the judgment as allows her only $1,500 of the property, which appears to have been jointly accumulated by her and appellee. It was agreed that the Boyd property is worth $2,500. It is stipulated that appellee had $2,510.75 in the bank, and that $1,075 of this is his part of the joint account. Appellant maintains that appellee has additional money. This he denies. We believe that the chancellor should have adjudged appellant an additional $1,000, this to include $75 additional for her attorney.

The judgment of the circuit court is reversed with directions for the entry of a judgment in conformity with this opinion.